[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 174.]

COLUMBUS BAR ASSOCIATION *v.* KING.

COLUMBUS BAR ASSOCIATION V. POPE.

[Cite as *Columbus Bar Assn. v. King*, 1998-Ohio-528.]

*Attorneys at law—Misconduct—One-year suspension with sanction stayed on conditions—Six-month suspension with sanction stayed—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation— Engaging in conduct prejudicial to the administration of justice— Engaging in conduct adversely reflecting on fitness to practice law— Taking action on behalf of client when it is obvious such action would merely harass or maliciously injure another—Concealing that which an attorney is required by law to disclose—Communicating or causing another to communicate on subject of representation with a party known to be represented.*

(Nos. 98-423 and 98-424—Submitted June 24, 1998—Decided December 9, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-115.

———————

{¶ 1} We consolidate these cases, *sua sponte*.

{¶ 2} On December 9, 1996, relator, Columbus Bar Association, filed a complaint charging respondents, Christopher King of Columbus, Ohio, Attorney Registration No. 0062199, and Samuel Pope of Columbus, Ohio, Attorney Registration No. 0062759, with the following violations of the Code of Professional Responsibility:

**{¶ 3}** DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation);

**{¶ 4}** DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice);

**{¶ 5}** DR 1-102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law);

**{¶ 6}** DR 7-102(A)(1) (taking action on behalf of a client when it is obvious that such action would serve merely to harass or maliciously injure another);

**{¶ 7}** DR 7-102(A)(3) (concealing that which an attorney is required by law to disclose); and

**{¶ 8}** DR 7-104(A)(1) (communicating or causing another to communicate on the subject of representation with a party known to be represented).

**{¶ 9}** In their answers, respondents denied these violations. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard these matters and found that relator proved all the allegations in the complaint.

**{¶ 10}** According to the testimony, King represented Kandy Cantrell in a "slip and fall" tort action against her former landlord. In January 1996, King planned to file a complaint on Cantrell's behalf seeking compensation for her injuries arising from this alleged tort. On or about January 26, King took Cantrell to Pope's office, where respondents decided that Pope would telephone Cantrell's former landlord to see whether the landlord would slander Cantrell. King and Pope, who were friends and had jointly represented another client, also decided to record the telephone conversation.

**{¶ 11}** Pope called the landlord and talked with the landlord's office manager. Pope represented to the office manager that Pope had received a rental application from Cantrell. Pope did own an old warehouse building that he planned to renovate and lease to commercial and residential tenants. However, the building

2

was far from ready for occupancy, Pope did not plan to accept children (Cantrell had three children), and Cantrell had just signed a one-year lease for another apartment.

{¶ 12} The office manager, on learning that Cantrell was the applicant, informed Pope that her company had evicted Cantrell for nonpayment of rent. The office manager also suggested to Pope that Cantrell might have personal problems and told Pope of some instances leading the manager to believe that this was the case. The manager, responding to Pope's questioning, stated that she suspected that illegal activity had occurred on Cantrell's premises. The manager, in ending the telephone call, declared to Pope that she would not rent to Cantrell again and warned Pope not to do so.

{¶ 13} Pope, according to his testimony, "just popped the eject button and handed [the tape of this telephone conversation] to [King]." King then amended the complaint he planned to file against the landlord to include a slander count. King, it appears, filed the complaint the next day.

{¶ 14} The panel found that "Pope's pose as a prospective landlord was a sham." The panel stated that the respondents failed to cooperate with the investigation and always avoided answering relator's questions. According to the panel, "[i]t is unconscionable the length of time that the Relator had to spend investigating this case due to the Respondents' comments and answers in depositions that went clear around the circle without giving a legitimate answer."

{¶ 15} Relator argued for a one-year suspension for each respondent and a stay of each suspension; respondents urged that they receive public reprimands. Nevertheless, the panel recommended that both respondents be indefinitely suspended from the practice of law and work with a monitor appointed by relator as a condition for reinstatement. The board adopted the panel's findings, conclusions, and recommendations.

———————————

*Vorys, Sater, Seymour & Pease*, *Julia A. Davis* and *Ivery D. Foreman*; and *Bruce A. Campbell*, for relator.

*Chester, Willcox & Saxbe, L.L.P.,* and *J. Craig Wright*, for respondent King.

*Samuel Pope, pro se.*

_____

***Per Curiam.***

**{¶ 16}** We have reviewed the record and adopt the findings and conclusions of the board. However, we disagree with the board's recommendations. We suspend King for one-year and stay the suspension on condition that, during the probation period, he work with a mentor appointed by relator. We suspend Pope for six months and stay the suspension. Costs taxed to respondents.

*Judgment accordingly.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

LUNDBERG STRATTON, J., concurs as to Pope but dissents as to King and joins the Chief Justice's dissent only as to King.

MOYER, C.J., and COOK, J., dissent.

_____

**MOYER, C.J., dissenting.**

**{¶ 17}** I respectfully dissent from the majority's decision to impose a one-year suspension on King, and a six-month suspension on Pope, with both sanctions stayed. The behavior of respondents King and Pope was of such a nature that an actual suspension is warranted in both cases.

**{¶ 18}** The evidence clearly supports the finding of the Board of Commissioners on Grievances and Discipline of the Supreme Court that King and Pope were in violation of DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). King and Pope conspired in a scheme to knowingly misrepresent Pope's identity in order to induce an adverse party into making a defamatory statement that could be the basis of additional

4

claims by King's client. Pope deliberately misrepresented his identity to employees of University Area Rentals with the knowledge, acquiescence, and participation of King. The scheme involved clear and knowing misrepresentations, and therefore constitutes a violation of DR 1-102(A)(4).

{¶ 19} In *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237, 240, we said that "[w]hen an attorney engages in a course of conduct resulting in a finding that the attorney has violated DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time."

{¶ 20} I agree with the board's finding and with the majority's holding that King and Pope violated the Code of Professional Responsibility. However, a stronger sanction than a totally stayed suspension is warranted. A lawyer is expected to maintain a "degree of personal and professional integrity that meets the highest standard." *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 153, 278 N.E.2d 670, 673. King and Pope have failed to operate in accordance with that standard.

{¶ 21} Harsh sanctions await attorneys who fail to fully cooperate with disciplinary investigations or fail to exhibit any sense of remorse. See, *e.g.*, *Dayton Bar Assn. v. Stinchfield* (1981), 65 Ohio St.2d 130, 19 O.O.3d 319, 418 N.E.2d 1366 (An indefinite suspension was warranted for an attorney who failed to take timely action on behalf of several clients and failed to cooperate with the bar association in an ensuing investigation.). In *Mahoning Cty. Bar Assn. v. Strobel* (1993), 66 Ohio St.3d 106, 609 N.E.2d 535, this court affirmed the board's recommendation of Strobel's permanent disbarment from the practice of law in Ohio. In making its recommendation, the board found it significant that Strobel's testimony to the board was difficult to accept as the truth, and that Strobel "lacked remorse and demonstrated no acceptance of responsibility." *Strobel* at 109, 609 N.E.2d at 537. The board also noted that Strobel had been disciplined in the past.

**{¶ 22}** King and Pope were less than fully cooperative during the investigation of this matter. According to the board, "[a]lthough [the respondents] answered the complaint and gave depositions, they actually did not state much concrete evidence. When asked questions, [both attorneys] always avoided the question and went into oratorical statements. This is especially true of respondent King, who is a philosophical orator."

**{¶ 23}** King in his objections to the board's report has accused the board of "*unreasonable, unlawful, disgusting, morally repugnant and shameful* bias." (Emphasis *sic*.) Similarly, Pope concluded that the board's report "brings into question the Boards [*sic* ] independent professionalism as a trier of fact and officer of the Court." It was not until the oral argument in their cases that King and Pope showed any remorse for their actions or any level of respect for the integrity of the board.

**{¶ 24}** Further, it is significant, as to King, that he has demonstrated unacceptable behavior in the past. There have been at least four grievances filed with the Columbus Bar Association against him, and he has been sanctioned by two judges.

**{¶ 25}** Failure to fully cooperate with a disciplinary investigation, failure to display a proper level of respect for the board, and failure to express any remorse for one's actions, especially when added to a history of prior disciplinary complaints and sanctions, have all been cited as aggravating factors in determining the appropriate level of punishment. Since all of these factors are present in this case, King and Pope's actions and responses warrant a harsher penalty than the majority has imposed.

**{¶ 26}** I would, therefore, impose a one-year suspension from the practice of law in Ohio, with six months' actual suspension and six months stayed.

COOK, J., concurs in the foregoing dissenting opinion.

———————————